# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| JACOB A. PURSLEY, | ) | CASE NO. 1:19-cv-2459 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| ANDREW SAUL, | ) | |
| Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **REPORT AND** |
| Defendant. | ) | **RECOMMENDATION** |

Plaintiff, Jacob Pursley, ("Plaintiff" or "Pursley"), challenges the final decision of Defendant, Andrew Saul,[1] Commissioner of Social Security ("Commissioner"), denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be VACATED and REMANDED for further consideration consistent with this opinion.

---

[1] On June 17, 2019, Andrew Saul became the Commissioner of Social Security.

1

# I.  PROCEDURAL HISTORY

On August 19, 2013, Pursley was found to meet the requirements for disability under the Supplemental Security Income program as of April 2013.   (Transcript ("Tr.") at 192, 239.)  His benefits were suspended when he was incarcerated from April 28, 2014 to April 1, 2015.  (*Id*. at 241).  Pursley had also previously been found to meet the requirements for disability under the Supplemental Security Income program as a child.  (*Id*. at 38.)

On January 21, 2016, Pursley filed a new application for SSI, alleging a disability onset date of August 1, 1991, and claiming he was disabled due to deficit disorder, bipolar disorder, anxiety disorder, anger problems, and schizophrenia.  (*Id*. at 243.)  The applications were denied initially and upon reconsideration, and Pursley requested a hearing before an administrative law judge ("ALJ"). (*Id*. at 156-59.)

On January 22, 2016, an ALJ held a hearing, during which Pursley, represented by counsel, and an impartial vocational expert ("VE") testified.  (*Id*. at 34.)  On July 17, 2018, the ALJ issued a written decision finding Plaintiff was not disabled.  (*Id*. at 14.)  The ALJ' s decision became final on August 21, 2019, when the Appeals Council declined further review.  (*Id*. at 1.)

On October 21, 2019, Pursley filed his Complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 11, 14, 15.) Pursley asserts the following assignments of error:

> I. Whether Plaintiff was entitled to an automatic resumption of benefits upon his release from custody.

> II. Whether the ALJ adequately developed the record regarding Plaintiff's prior benefits award and addressed the doctrine of administrative *res judicata.*

2

(Doc. No. 11 at 6.)

## II.    EVIDENCE

### A.    Personal and Vocational Evidence

Pursley was born in July 1987 and was 28 years old, which is defined as a "younger individual age 18-49 " under Social Security regulations, on the date the application was filed.  (Tr. 26.)  *See* 20 C.F.R. §§ 404.1563 & 416.963.  He has a high school education and is able to communicate in English.  (*Id.*)  He has past relevant work as a cook, water damage and wood worker.  (*Id*.)

### B.    Relevant Medical Evidence[2]

Pursley's two assignments of error are procedural in nature and therefore the parties identify no relevant medical evidence in this case.  (Doc. No. 11 at 6; Doc. No. 14.)

### C.    State Agency Reports[3]

On January 21, 2016, Social Security employee H. Fronce determined that Pursley was incarcerated at Geauga County Jail from April 28, 2014 to June 19, 2014 and at Mansfield Correctional Facility from June 19, 2014 to April 1, 2015.  (Tr. 241.)

### D.    Hearing Testimony[4]

During the January 22, 2018 hearing, Pursley testified to the following:

---

[2]  The Court's recitation of the medical evidence is limited to the evidence cited in the parties' Briefs.

[3]  Because the assignments of error are procedural in nature, the opinions of the state agency examining physicians and psychologists are not relevant in this case.

[4]  The Court's recitation of the hearing evidence is limited to the evidence relevant to the procedural errors alleged in this case.

3

- He was incarcerated for grand theft after stealing a dirt bike.  He pled guilty.  There was no competency evaluation at any time in that proceeding.  (Tr. 45.)

- He lives with his girlfriend and his four-year-old daughter.  (*Id*. at 45-46.)

- He no longer drives, because he lost his license.  At a traffic stop, a police officer told him the license was no longer valid.  He is unsure why.  (*Id*. at 46-47.)

- He worked stacking wood for three months in 2013.  He left that job after getting into a fight with another employee.  (*Id*. at 49-52.)[5]

- After leaving the wood-stacking job, he was self-employed doing water damage remediation at a SuperK store.   His job involved cutting plastic film to protect items in rooms exposed to leaks.  He did not lift or carry the rolls of film.  He left that job when he was incarcerated.  (*Id*. at 54-56.)

- He feels he cannot work due to his really bad anger issues, inability to get along with others, and inability to look at other people.  (*Id*. at 60.)

- He feels the medication he takes makes him angrier, but when he reported this to his psychiatrist, she increased his dosage.  (*Id*. at 62.)

- He believes the medicine caused him to hit his girlfriend and family members, so he stopped taking it.  (*Id*. at 62-63.)

- He stopped going to counseling because he couldn't deal with the counselor.  He doesn't like to talk about his feelings with other people.  (*Id*. at 65-66.)

- He also had a case manager helping him with transportation and getting necessities such as toilet paper.  (*Id*. at 67.)

- He lashes out at this girlfriend, adult nephew, and parents.  He has no friends.  (*Id*. at 69.)

- He has two dogs.  (*Id*. at 70-71.)

- He spends his days with his four-year-old daughter, bathing, preparing meals,

---

[5]  Evidence relating to Pursley's prior employment was added to the record less than five days prior to the hearing, and Pursley's counsel was not alerted to this additional evidence, causing considerable confusion at the hearing.  (Tr. 52-53.)  Pursley's counsel addressed this issue in her post-hearing brief.  (*Id*. at 308-13.)

reading and playing with her. They sometimes "bump heads," because she takes after him and sometimes likes to be by herself. He thinks she may have been evaluated for problems, but his girlfriend accompanies her to doctor's appointments, so he is unsure. (*Id*. at 72-74.)

- He was in special education in school. He has trouble with reading and math. He can read the basics, and add and subtract. (*Id*. at 75.)

The VE testified Pursley had past work as a Material Handler and Cleaner, Home Restoration Service. (*Id*. at 77.) The ALJ then posed the following hypothetical question:

> Assume an individual similar to the claimant in age who's under the age of 40. . . . He's 30 years old, high school diploma, work history that we've just identified. He can engage in medium exertion, can frequently climb ladders, ropes and scaffolds, can frequently stoop and crawl, and is limited to simple, routine-type work without strict production quotas for time or quantity. Goal-oriented work is acceptable. Can interact with others to speak, signal, take instructions and serve. No conflict resolution or arbitration. As you review this hypothetical individual, could he return to his past work?

(*Id*. at 80.)

The VE testified the hypothetical individual would not be able to perform Pursley's past work as a Material Handler or Cleaner, Home Restoration Service. (*Id*. at 81.) The VE explained the hypothetical individual would be able to perform other representative jobs in the economy, such as Cleaner II, Laundry Worker II, or Laborer, Stores. (*Id*.)

Next, the ALJ asked whether adding a limitation that the hypothetical individual could interact with others up to occasionally, to speak, signal, take instructions and serve, would change the VE's answer in any way. (*Id*. at 82.) The VE testified his answer would not change. (*Id*.)

The ALJ asked whether adding a limitation that the individual would be off task 10% of the day would change the VE's answer in any way. (*Id*. at 83.) The VE testified his answer would not change. (Id.)

The ALJ asked whether adding a limitation that the hypothetical individual would miss two days of work a month would change the VE's answer in any way.  (*Id*.)   The VE answered that this limitation would preclude all work at the unskilled level.  (*Id*. at 84.)

Pursley's counsel explained to the ALJ that she had been unable to get a copy of the prior file from the Commissioner, and asked the ALJ to get a copy of the prior file and award information.  (*Id*. at 37-38.)   Counsel argued that this prior award information was important because the proper standard of review in the case before the ALJ was whether Pursley had experienced medical improvement based on the *Drummond* decision and the doctrine of administrative *res judicata.*  (*Id*. at 39-41.)   The ALJ asked counsel for the authority for this argument, and postponed ruling on the case for 30 days so that she could inquire about Pursley's prior award and determine why his benefits were not automatically reinstated following his incarceration.  (*Id*. at 41, 89.)   Pursley's counsel submitted a brief to the ALJ on February 14, 2018, setting forth the authority for her argument, and also raising concerns regarding evidence at the hearing.  (*Id*. at 308-13.)

### III.    STANDARD FOR DISABILITY

A disabled claimant may be entitled to receive SSI benefits.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs*., 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4).  *See also Ealy v. Comm'r of Soc. Sec*., 594 F.3d 504, 512 (6th Cir. 2010);  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  Second, the

claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience.  *See* 20 C.F.R. §§ 404.1520(d) and 416.920(d).  Fourth, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g).

## IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant has not engaged in any substantial gainful activity since January 11, 2016, the application date.

2.  The claimant has the following severe impairments: defects in the pars at L5, generalized anxiety disorder, and personality disorder.

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined on 20 CFR 416.967(c) except the claimant can frequently climb

ladders, ropes, and scaffolds, as well as frequently stoop and crawl. The claimant is limited to simple, routine type of work without strict production quotas for time or quantity. Goal oriented work is acceptable and he can interact with others to speak, signal, take instructions, and serve.[6] The claimant can engage in no conflict resolution or arbitration.

5.      The claimant is unable to perform any past relevant work.

6.      The claimant was born on July **, 1987 and was 28 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

7.      The claimant has at least a high school education and is able to communicate in English.

8.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills.

9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10.     The claimant has not been under a disability, as defined in the Social Security Act, since January 11, 2016, the date the application was filed.

(Tr. 20-27.)

## V.  STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, ,424 F. App'x 411, 414 (6th Cir. 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572

---

[6] These mental functions are consistent with the DOT, companion publication Revised Handbook of Characteristics of Jobs, Chapter 3.

F.3d 272, 281 (6th Cir. 2009).  Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied.  Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal.  *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence,

however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996); accord *Shrader v. Astrue*, No. 11  13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10  cv  734, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, No. 2:10  CV  017, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09  cv  1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  ANALYSIS

**A.**     **First Assignment of Error: Whether Pursley was entitled to an automatic resumption of his benefits upon his release from custody.**

 Pursley asserts that he was entitled to an automatic resumption of his benefits because his period of incarceration was from April 28, 2014 to April 1, 2015, which is less than a year. (Doc. No. 11 at 7.)  He was advised by his local Social Security office to refile a new application for benefits instead of seeking reinstatement of his prior benefits, and relied on this advice because he was proceeding *pro se* at the time.  (*Id*.)  He argues that this mistake should not invalidate his entitlement to an automatic resumption of benefits.  (*Id*.)

Although the ALJ requested and received briefing on the issue, she failed to address it in

10

her decision.  Commissioner contends that, although Pursley's period of incarceration was less than 365 days long, it lasted 12 months under Social Security regulations and accordingly, his benefits were properly terminated by the Agency. (Doc. No. 14 at 3.)

Social Security regulations establish a "suspend then terminate" procedure for individuals incarcerated in public institutions.  Upon incarceration, an SSI recipient's benefits are first suspended.  Pursuant to 20 C.F.R. § 416.1325(a), an SSI recipient "is ineligible for benefits for the first full calendar month in which he or she is a resident of a public institution (as defined in § 416.201) throughout the calendar month (as defined in § 416.211(a)), and payments are suspended effective with such first full month. Such ineligibility continues for so long as such individual remains a resident of a public institution."  20 C.F.R. § 416.1325(a).  If the recipient's incarceration continues beyond 12 months, the regulations provide for benefits to be terminated.  Pursuant to 20 C.F.R. 416.1335, the Agency will terminate an individual's eligibility for benefits "following 12 consecutive months of benefit suspension for any reason."  20 C.F.R. § 416.1335.  The regulation further explains that  the 12-month suspension period is calculated "from the start of the first month that [a recipient is] no longer eligible for SSI benefits (see § 416.1320(a)) or the start of the month after the month [a recipient's] special SSI eligibility status described in § 416.265 ended. This termination is effective with the start of the 13th month after the suspension began."  *Id.*  After release from incarceration, a recipient whose benefits were terminated under 20 C.F.R. § 416.1335 must file a new SSI application upon her release from prison.  *Blair v. Comm'r of Soc. Sec. Admin.*, No. 3:18-CV-00018, 2019 WL 4737619, at *3 (S.D. Ohio Sept. 27, 2019), *citing Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008).

Both parties are in agreement regarding the dates of Pursley's incarceration: April 28, 2014

11

to April 1, 2015.  (Tr. 241, 367.)  Further, they concur that, since Pursley began his incarceration on April 28, 2014, the first full calendar month in which he was a resident of a public institution was May 2014.  (Doc. No. 14 at 4.)  Pursley's benefits were properly suspended as of May 2014, and it is undisputed the suspension properly continued for 11 subsequent months: May 2014 (1), June 2014 (2), July 2014 (3), August 2014 (4), September 2014 (5), October 2014 (6), November 2014 (7), December 2014 (8), January 2015 (9), February 2015 (10), March 2015 (11).  (*Id*.)  Here, however, the parties' calculations diverge.  Pursley argues that he was not incarcerated for twelve consecutive months, and therefore his benefits should have automatically resumed upon his release.  (Doc. No. 11 at 7.)  The ALJ did not address this issue, but the Commissioner provides the *post hoc* rationalization that the single day on incarceration in April 2015 established Pursley's incarceration for a twelfth consecutive month, and that his benefits were therefore properly terminated May 1, 2015, even though Pursley was no longer incarcerated at that time.  (Doc. No. 14 at 4.)

Neither party cites authority for the proposition that a single day can - or cannot - constitute a full month under Social Security regulations.  Although perceptions of time are fluid, a plain reading of the phrase "twelve consecutive months" does not equate a month with an single day.  The structure of the regulation, which terminates the coverage "effective with the start of the 13th month after the suspension began," is logical only if the recipient is incarcerated throughout that twelfth month.  The regulations themselves provide further guidance.  20 C.F.R. § 416.211(a), which is cited in 20 C.F.R. § 416.1325(a), explains: "you are not eligible for SSI benefits for any month throughout which you are a resident of a public institution . . . . By *throughout a month* we mean that you reside in an institution as of the beginning of a month and stay the entire month."  20 C.F.R. § 416.211(a)(1), (2) (emphasis in original).  20 C.F.R. § 416.211(a) also sets forth exceptions: "If you

12

have been a resident of a public institution, you remain a resident if you are transferred from one public institution to another or if you are temporarily absent for a period of not more than 14 consecutive days. A person also is a resident of an institution throughout a month if he or she is born in the institution during the month and resides in the institution the rest of the month or resides in the institution as of the beginning of a month and dies in the institution during the month." *Id.* None of those exceptions apply in this case.[7] Therefore, the undersigned concludes that Pursley was not a resident of a public institution for 12 consecutive months, and was entitled to an automatic resumption of benefits upon his release from prison.

The regulations also provide that SSI recipients are entitled to written notice regarding any intended action to reduce, suspend or terminate SSI benefits. The Agency is required by statute to provide "reasonable notice" to claimants of any determination regarding the claimant's eligibility for, or regarding the amount of, the claimant's benefits. 42 U.S.C. § 1383(c)(1)(A). The statute requires such notices to be written in simple and clear language. 42 U.S.C. § 1383(o). If SSI fails to provide a notice, or the content of the notice is incomplete or confusing, the claimant may have good cause if she or he fails to file an appeal in a timely fashion. *Ford v. Shalala*, 87 F. Supp. 2d 163, 166 (E.D.N.Y. 1999), *judgment entered sub nom Ford v. Apfel*, No. CV-94-2736 (CPS), 2000 WL 281888 (E.D.N.Y. Jan. 13, 2000).

Here, despite repeated inquiries from Pursley's counsel, the Social Security Administration has refused to provide the file supporting Pursley's previous adult award of benefits. Plaintiff's

---

[7] The fourteen-day absence may apply only temporary absences. The most logical reading of the regulations is that release at any point in the month would preclude a finding that a person was resident throughout that month. However, it is not necessary to reach that issue in this case, because Pursley departed on the first day of the month, and thus was non-resident for 29 days of April 2015.

counsel explained to the ALJ that the only document she had from that file was a letter alerting Pursley to an overpayment of benefits dated January 28, 2014. (Tr. 38.)  Because this file is not in the record, the Court is unable to confirm that Pursley received proper notice that his benefits were being terminated.

The Agency is also required by statute to "develop a system under which an individual can apply for supplemental security income benefits under this subchapter prior to the discharge or release of the individual from a public institution."  42 U.S.C. § 1383(m).  Here, the Court believes the resumption of benefits should have been automatic.  However, if the Social Security Administration properly terminated his benefits, they were required by statute to give him the opportunity to reapply prior to his release on April 1, 2015.  Given that Pursley did not reapply until January 2016, it seems unlikely this occurred.[8]  However, due to the absence of records, it is again not possible for the Court to determine whether Pursley was given the opportunity to either resume or reapply for his benefits.

The ALJ failed to address these issues in her Decision.  Instead, as discussed below, the ALJ erroneously used the greater-than-two-year gap between the notice of initial determination in the prior case and the current application as the rational for disregarding the prior application entirely, and witholding it from Pursley.  (Tr. 17.)  Incomplete though it is, the record in this case suggests that this delay was the result of the failure of the Agency to inform Pursley of the procedure to either resume or reapply for his benefits prior to his April 1, 2015 release from prison, as they are

---

[8]  Indeed, following this procedure would have led to the nonsensical result of requiring Pursley to reapply for benefits that had not yet been terminated, since under the regulations his benefits should not have terminated until the start of the thirteenth consecutive month: May 2015.

14

required by statute to do.[9]  Further, Pursley asserts he relied on the advice of a local Agency representative in reapplying for SSI, rather than seeking reactivation of his benefits.  (Doc. No. 11 at 7.)

Pursley has consistently presented this legal argument.  (Doc. No. 11 at 8.)  The hearing record confirms the ALJ told his counsel she would determine why his benefits were not automatically reinstated but failed to address this issue in her Decision.  The appropriate remedy for an ambiguous or incomplete record is remand. *See, e.g., Smith v. Astrue*, No. 1:11-cv-778, 2012 WL 5268712 (S.D. Ohio Oct. 23, 2012) ("Given that: (1) Plaintiff consistently presented his legal argument; and (2) the ALJ stated that she would obtain the necessary records and review Plaintiff's argument but apparently failed to do so, this Court must remand."); *Bonner v. Astrue*, 725 F. Supp. 2d 898, 901 (C.D. Ca. 2010) ("Since the record is ambiguous regarding this information, the ALJ failed to consider whether plaintiff's benefits were properly terminated under Section 416.1335 or should have resumed following plaintiff's release from prison, 20 C.F.R. § 416.1325(b); thus, the ALJ did not properly develop the record.").

All of this constitutes good cause for Pursley's failure to pursue automatic resumption of his benefits in a timely manner.  The undersigned recommends that the case be remanded to the ALJ for supplementation of the record regarding Pursley's prior adult SSI benefits.  On remand, the ALJ should supplement the record regarding Pursley's prior adult SSI benefits by including the file supporting the previous determination; explain whether those benefits were properly terminated or

---

[9]  The date of the initial determination in the prior case was August 19, 2013.  (Tr. 17.) Therefore, if Pursley had reapplied prior to his discharge from prison on April 1, 2015, he would have been within the two-year window provided by SSR 416.1488(b).  As the ALJ's Decision acknowledges, such an application date would have allowed the prior case to be re-opened.  (*Id.*)

15

suspended, on what date, and for what reasons; identify any notices concerning the termination of benefits; and determine whether Pursley received the opportunity to reapply for his SSI benefits before his release from prison.

**B.** **Second Assignment of Error: Whether the ALJ adequately developed the record regarding Pursley's prior benefits award and addressed the doctrine of administrative *res judicata***

Pursley asserts that the ALJ erred by failing to consider the record supporting his prior finding of disability.  (Doc. No. 11 at 11.)  Pursley had been previously adjudicated disabled, both as a child and as an adult.  (*Id*.)  Pursley's counsel raised this issue prior to and during the hearing, but believes the ALJ "misconstrued Plaintiff's request for this necessary information as a request to reopen his prior application for benefits." (*Id*., citing Tr. 17-18).  Pursley asserts that he did not request that the ALJ reopen his prior application.  (*Id*.)   Instead, he sought to have those records included in the record of the current case to establish the basis for the previously awarded benefits, the reason those benefits were terminated,[10] and allow his counsel advocate, on Pursley's behalf, that he has not experienced medical improvement since the 2013 award. (*Id*.)

The Commissioner asserts that Pursley is mistaken in asserting the doctrine of *res judicata* applies in this case, and argues the ALJ's findings were proper.  (Doc. No. 14 at 5.)   Further, he asserts that even if the ALJ should have acknowledged Pursley's previous application and award of benefits, this was harmless error because the ALJ "took a 'fresh review' of the new evidence in the record" as required by Earley.  (*Id*. at 7-8.)

The Court finds the ALJ's failure to discuss the prior SSI decision constitutes error which

---

[10]  Despite the discussion of the "suspend, then terminate rule" in the prior section, there is no evidence in the record documenting the termination or establishing its basis.

16

requires remand.   In *Drummond v. Commissioner of Social Security*, the Sixth Circuit held that

"[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits,

the Commissioner is bound by this determination absent changed circumstances." *Drummond*, 126

F.3d 837, 842 (6th Cir. 1997) (relying on *Senters v. Sec'y of Health & Human Servs*., 1992 WL

78102 (6th Cir. Apr. 17, 1991) (per curiam). *See also Dennard v. Sec'y of Health & Human Servs*.,

907 F.2d 598 (6th Cir.1990) (per curiam); *Blankenship v. Comm'r of Soc. Sec.*, 624 F. App'x 419,

425 (6th Cir. Aug. 26, 2015).   In that case, Drummond's initial claim for SSI was denied when an

ALJ found that Drummond retained a RFC for sedentary work.  *Drummond*, 126 F.3d. at 838. When

Drummond later re-filed her disability claim, a second ALJ found that Drummond retained a RFC

suitable for medium-level work    unlike the sedentary RFC finding of the first ALJ    and denied the

re-filed claim. *Id.* at 839. After explaining that "*[r]es judicata* applies in an administrative law

context following a trial type hearing," the Sixth Circuit held that the second ALJ was bound to the

sedentary RFC determination of the first ALJ because there was no new or additional evidence of

an improvement in Drummond's condition. *Id.* at 841 842. "Just as a social security claimant is

barred from relitigating an issue that has been previously determined, so is the Commissioner." *Id.*

In response to *Drummond,* the Social Security Administration promulgated Acquiescence Ruling

98 4(6). The Administration explained:

> This Ruling applies only to disability findings in cases involving claimants who
> reside in Kentucky, Michigan, Ohio, or Tennessee at the time of the determination
> or decision on the subsequent claim at the initial, reconsideration, ALJ hearing or
> Appeals Council level. It applies only to a finding of a claimant's residual
> functional capacity or other finding required at a step in the sequential evaluation
> process for determining disability provided under 20 CFR 404.1520, 416.920 or
> 416.924, as appropriate, which was made in a final decision by an ALJ or the
> Appeals Council on a prior disability claim.

17

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

Acquiescence Ruling 98 4(6) (S.S.A.), 1998 WL 283902, at *3 (1998) (emphasis added) (footnote omitted).

The Sixth Circuit clarified the scope of *Drummond* and its progeny in *Earley v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. June 27, 2018). In *Earley*, the Sixth Circuit clarified *res judicata* applies to subsequent applications for "the same period of time [ ] rejected by the first application." *Id.* at 933. The Sixth Circuit further reasoned:

> While we are at it, we should point out that issue preclusion, sometimes called collateral estoppel, rarely would apply in this setting. That doctrine "foreclos[es] successive litigation of an issue of fact or law actually litigated and resolved." *Id.* at 748-49, 121 S.Ct. 1808. But human health is rarely static. Sure as we're born, we age. Sometimes we become sick and sometimes we become better as time passes. Any earlier proceeding that found or rejected the onset of a disability could rarely, if ever, have "actually litigated and resolved" whether a person was disabled at some later date.
>
> All of this helps to explain why *Drummond* referred to "principles of *res judicata*" with an accent on the word "principles." 126 F.3d at 841-843. What are those principles? Finality, efficiency, and the consistent treatment of like cases. An administrative law judge honors those principles by considering what an earlier judge found with respect to a later application and by considering that earlier record. *Id.* at 842, *see Albright v. Comm'r of Soc. Sec.*, 174 F.3d 473, 478 (4th Cir. 1999). This is why it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are legitimate, albeit not binding, consideration in reviewing a second application.

*Earley*, 893 F.3d at 933.

The Commissioner asserts that *Drummond* is inapplicable to the instant case because there

was no prior decision by an ALJ or the Appeals Council.  (Doc. No. 14 at 5.)  He argues under *Drummond* and *Easley*, that principles of *res judicata* should only be applied to determinations made by an ALJ or the Appeals Council, not to claims resolved at the initial stage of application, which are based on the findings of disability examiners and do not involve a hearing.  However, considered in the light of the *Earley* court's clearly-stated rationale for applying the principles of *res judicata* to prior decisions - finality, efficiency, and the consistent treatment of like cases - the Commissioner's argument is not persuasive.

The language in Aquiescence Ruling 98-4(6) limiting application of the principles of *res judicata* to "a final decision by an ALJ or the Appeals Council" is not an accurate reflection of the Sixth Circuit's rulings.   Pursley is correct that courts in the Sixth Circuit understand *Drummond* to require the application of *res judicata* to apply to prior administrative SSI determinations as well. *Miller v. Astrue*, No. 3:11-CV-133, 2012 WL 220234, at *1 (S.D. Ohio Jan. 25, 2012), *report and recommendation adopted sub nom. Miller v. Comm'r of Soc. Sec.*, No. 3:11CV133, 2012 WL 4504545 (S.D. Ohio Sept. 28, 2012) ("Although the previous administrative decision was not made by an ALJ, it did constitute a determination by the Social Security Administration that Plaintiff met Listing 12.05.  Such determinations are "subject to the doctrine of administrative *res judicata*.") (citation omitted). Courts within this Circuit have consistently remanded cases where an ALJ failed to discuss a prior disability determination.  *See Rosebud v. Colvin*, No. 13-153-GFVT, 2015 WL 1481394 (E.D. Ky. Mar. 31, 2015) ("contrary to the Commissioner's restrictive reading, *Drummond* expressly contemplates that the principles of *res judicata* apply to any 'final decision concerning a claimant's entitlement to benefits'   even if that decision was not made by an ALJ or the Appeals Council"); *McGuire v. Colvin*, 1:14-cv-00220, 2015 WL 105984, *5 (N.D. Ohio  Jan. 7, 2015)

19

("Contrary to Defendant's assertion, the principles of *Drummond* apply regardless of whether there was a prior ALJ or Appeals Council decision."); *Priest v. Comm'r of Soc. Sec.*, No. 1:12cv840, 122014 WL 801390, *3 (W.D. Mich. Feb. 28, 2014) ("The doctrine of administrative *res judicata* is applicable to the initial determination by the agency"); *Belew v. Astrue*, No. 2:11 107 DCR, 2012 WL 3027114, *3 (E.D. Ky. July 24, 2012); *Harris v. Astrue*, No. 3:09cv00260, 2010 WL 3909495, at *1 2 (S.D. Ohio May 21, 2010), *report & recommendation adopted*, 2010 WL 3909493 (S.D. Ohio Sept. 29, 2010); *Bragg v. Comm'r*, 10-cv-12055, 2011 WL 1374067, at *4 (E.D. Mich. 2011) (remanding because ALJ failed to inquire into and address the effect of Plaintiff's prior award of benefits and her subsequent termination due to incarceration on her re-application for benefits).  As many of these courts noted, the Social Security regulations define "determination" to include "the initial determination or the reconsidered determination."  20 C.F.R. § 401.901.

Nothing in *Earley* changes this analysis, to the extent the prior determination and new application cover the same period of disability.  *Earley* clarified *Drummond* by making explicit that an ALJ was not bound by a prior decision when a new application covered a new period of disability. However, the *Earley* court did not sanction entirely ignoring the earlier record.   Instead, an ALJ facing a "new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability" should make determinations based on a "fresh look" at the "new evidence . . . while being mindful of past rulings and the record in prior proceedings." *Earley*, 893 F.3d at 931.  The *Earley* court was clear that "[f]resh review is not blind review." *Id.* at 934.  An ALJ "should [not] completely ignore earlier findings and applications." *Id.*  Instead, "[a] later administrative law judge may consider what an earlier judge did if for no other reason than to strive for consistent decision making." *Id.* Thus, "it is fair for an [ALJ] to take the view that, absent new

and additional evidence, the first [ALJ's] findings are a legitimate, albeit not binding, consideration in reviewing a second application." *Id.* at 933.

The sole mention of Pursley's prior benefits award is in the "procedural history" section of the ALJ's Decision. The ALJ writes:

> The representative submitted a brief after the hearing outlining her arguments on the grounds of res judicata and that the undersigned is bound to follow the initial determination of August 19, 2013 finding the claimant disables as of April 23, 2013 (Exhibit 13E). In essence, the representative's arguments are a request to re-open the prior claim. However, according to 416.1488(b) a final determination or an ALJ decision may be re-opened "within two years of the notice of the initial determination, if we find good cause." In this case, notice of the initial determination was issued August 19, 2013 (Exhibit 1 A/2) and the current application was filed January 11, 2016, which is more than two years after the initial determination. Hence, the undersigned is precluded from re-opening /re-visiting the prior claim because it is more than two years from he notice of initial determination. Therefore, the only issue before the undersigned is the current application of January 11, 2016.

> The claimant's representative also requested obtaining the prior file as a means of obtaining evidence to support the claimant's assertions that he was disabled and also to provide the evidence to support his current assertion that he remains disabled (Exhibit 14E). This request is denied because it requires the undersigned to re-open the prior claim and it has been more than two years since the notice of initial determination with all of the same law referenced above.

(Tr. 17-18.) The Court finds this response curious. First, the ALJ asserts she cannot provide Plaintiff's counsel with a copy of his prior file without re-opening that application. She cites no legal basis for this assertion, and given that the record shows the Agency responded to Plaintiff's counsel's first request for this record by providing the file relating Pursley's juvenile benefit award, it cannot be accurate. (*Id*. at 38.) Further, as explained *supra*, the ALJ is wrong in asserting that the principles of *res judicata* set forth in *Drummond* and *Earley* require re-opening the application underlying the prior determination, and are therefore only applicable to subsequent applications filed within the

21

two-year time frame established by Rule 416.4188(b).

The failure to provide the previous record to Pursley's counsel is particularly troubling because the ALJ relied on employment records from the period covered by that application to establish Pursley's prior work history, and gave consideration to the 2013 opinion of consultative psychological examiner, Richard Halas, M.A.  (Tr. 24, 26.)  The employment which the ALJ determined was "part relevant work" took place in 2013-14, and terminated with Pursley's incarceration.[11]  (*Id*. at 49-52.)  The relevant work was therefor performed immediately prior to and during the time Pursley was being evaluated for the prior benefits, and continued after he was awarded benefits on August 19, 2013.  By relying on these records, the ALJ acknowledged that the period covered by the prior determination was relevant to the current application.  The missing file would provide valuable context for these records, and revealing only part of the prior benefit record creates the inference of improper "cherry-picking" by the ALJ.[12]

The ALJ's failure to develop the record regarding Pursley's prior benefits award constitutes reversible error.  *See McGuire*, 2015 WL 105984 at *5; *Harri*s, 2010 WL 3909495 at *5  6; *Bragg* 2011 WL 137406, at *4.  Further, the lack of evidence in the record regarding the prior determination makes it impossible for the Court to determine whether it is appropriate to apply *Drummond's* principles of *res judicata*, as Pursley asserts.  Accordingly, the Court finds remand is necessary, thereby affording the ALJ an opportunity to supplement the record with evidence underlying the

---

[11]  These records surprised Plaintiff's counsel at the hearing, because they were added less than five days prior to the hearing and therefore she did not have them on the CD that contained her copy of the record.  (*Id*. at 52-53.)

[12]  The Court has insufficient information to determine whether any of these records formed part of the prior decision file.

22

prior adult SSI decision, properly consider that evidence, and address or apply *Drummond* to the extent it is applicable.

## VII.  CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be VACATED and REMANDED for further consideration consistent with this opinion.

*s/Jonathan D. Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge

Date: June 2, 2020

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**